UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| HARSHKUMAR PATEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:25-CV-00114-ACL |
| | ) |
| UNITED STATES CITIZENSHIP AND | ) |
| IMMIGRATION SERVICES, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff, *pro se*, brought this action against Defendant United States Citizenship and Immigration Services ("USCIS") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*. This matter is presently before the Court on Defendant's Motion to Dismiss for lack of subject-matter jurisdiction. (Doc. 6.)

**<u>Background</u>**

In his Complaint, Plaintiff states that he is a citizen and national of India who currently resides in Kennett, Missouri, and has lived in the United States for approximately five years. (Doc. 1 at 3.) Plaintiff states that he was the victim of an armed robbery in Kennett, Missouri, on January 17, 2024. *Id.*

On October 24, 2024, Plaintiff filed an I-918 Petition for U Nonimmigrant Status ("I-918 Petition"). *Id.* Plaintiff also filed a Form I-765 Application for Employment Authorization ("I-765 Application"). Plaintiff alleges that he does not have any disqualifying criminal history. *Id.* To date, USCIS has taken no action on any of Plaintiff's applications. *Id.* Plaintiff alleges that

1

this delay leaves him without a bona fide determination, work authorization, or deferred action. *Id.*

The Complaint sets forth three causes of action:  (1) unreasonable delay of a bona fide determination under the APA; (2) unlawful withholding of waiting list decision under the APA; and (3) unreasonable delay of waiting list decisions under the APA.  In his Prayer for Relief, Plaintiff requests that this Court declare all delays described in the Complaint as unreasonable, and order USCIS to issue a bona fide decision in 14 days.  In the alternative, Plaintiff requests that the Court declare USCIS's refusal to make waiting list decisions unlawful and order USCIS to make a waiting list decision within a reasonable time; or declare USCIS's delay in making a waiting list decision unlawful and order USCIS to make a waiting list decision within 30 days.

Defendant USCIS moves to dismiss the Complaint for lack of subject-matter jurisdiction.  Defendant argues that the Complaint should be dismissed on three independent grounds: (1) Plaintiff's use of a template purchased from "Pro Se Pro" in drafting his Complaint raises unauthorized practice of law concerns; (2) principles of *res judicata* and issue preclusion bar this action; and (3) this Court lacks subject-matter jurisdiction over this action pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii).  On December 11, 2025, Defendant filed a Notice of Supplemental Authority. (Doc. 9.)

Plaintiff has not responded to Defendant's Motion.

## **Standard**

Whether the Court has subject-matter jurisdiction, that is, authority to decide the merits of a case, is a threshold matter.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  A court may dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).  "The plaintiff bears the burden of establishing subject matter jurisdiction" when a defendant moves to

2

dismiss under Rule 12(b)(1).  *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023) (citing *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)).

## Discussion

The undersigned will discuss Defendant's arguments in turn, beginning with the threshold issue of this Court's subject-matter jurisdiction.

### A.  Subject-Matter Jurisdiction

Plaintiff's Complaint alleges that the USCIS has taken no action on any of his applications for benefits.  He therefore requests that this Court, under the APA, declare all delays unreasonable and order USCIS to issue a bona fide determination in 14 days.  In the alternative, Plaintiff requests that the Court declare USCIS's refusal to make a waiting list decision or delay in making a waiting list decision unlawful, and order USCIS to make a waiting list decision within 30 days.

The APA provides that: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The statute further provides that in reviewing an agency decision, the Court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "The APA's right to judicial review," including in cases of unreasonable delays, "does not apply when 'statutes preclude judicial review.'"  *Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024) (quoting 5 U.S.C. § 701(a)(1)).

### *Legal Background*

At issue here is the U visa program, which was created as part of the Victims of Trafficking and Violence Protection Act of 2000 and is codified at 8 U.S.C. § 1101(a)(15)(U).  The U visa program grants temporary lawful nonimmigrant status and work authorization to

noncitizens if USCIS determines "the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" that has occurred in the United States; "the alien ... possesses information concerning [that] criminal activity"; and "the alien ... has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting [that] criminal activity." 8 U.S.C. § 1101(a)(15)(U)(i).  An immigrant seeks a U visa by filing an I-918 Petition for U Nonimmigrant Status.  8 C.F.R. § 214.14(c)(1).  If the U visa petition is approved, and the petitioner is present in the United States, the petitioner will receive lawful nonimmigrant status and employment authorization for up to four years, which can be renewed.  8 U.S.C. §§ 1184(p)(6), 1184(p)(3)(B); 8 C.F.R. § 274a.12(a)(19).  Petitioners must specifically seek employment authorization, and they generally do so by filing a separate I-765 Application simultaneously with their I-918 petitions.

Congress capped the number of U visas available each year at 10,000.  8 U.S.C. § 1184(p)(2)(A).  The number of petitions far exceeds the number of U visas available.  New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,033 ("USCIS estimates that it will receive 12,000 Forms I-918 and 24,000 Forms I-918, Supplement A each fiscal year.").  If USCIS determines a petitioner is eligible in all respects but the annual cap means no U visas are available, the petitioner "must be placed on a waiting list and receive written notice of such placement."  8 C.F.R. § 214.14(d)(2).  According to the regulation, a petitioner on the waiting list may receive employment authorization in USCIS's discretion.  *Id.*  Petitioners residing in the United States will receive deferred action and await the availability of a U visa.  *Id*.

4

As to the statutory provision at issue here, the Immigration and Nationality Act (INA) provides in part, "The Secretary [USCIS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6).  Although the term "bona fide application" appears in § 1184(p)(6), the statute does not define "bona fide," "bona fide application," or otherwise dictate the process that the Secretary uses to determine whether to grant work authorization.  *See* 8 U.S.C. § 1184(p)(6).  As a result, USCIS implemented a "bona fide determination" ("BFD") process to determine which pending U visa petitions were "bona fide" and thus, those petitioners were eligible for discretionary interim benefits of work authorization and deferred action. USCIS, Policy Manual, Vol. 3, Part C, Ch. 5, available at https://www.uscis.gov/policy-manual (last visited January 15, 2026).  These benefits are considered "interim" because U visa petitioners can receive them while they wait for the full benefit of a U visa, which is limited by the statutory cap. *Id.* Ch. 4.

According to USCIS, the U visa program now involves "three distinct adjudicative processes:" (1) the BFD process; (2) waiting list adjudication; and (3) final adjudication.[1] *Id.*

If USCIS ultimately decides the U visa petition is not bona fide, then a waiting list adjudication is initiated for that petition.  *Id.* Ch. 6.  Unlike the BFD, waiting list adjudication involves a full file review and analysis of the U visa eligibility requirements.  *Id.* Ch. 7, Ch. 6. At the conclusion of this waiting list review, USCIS either denies the petition or places the

---

[1] USCIS maintains a "Bona Fide Determination Process Flowchart" to visually illustrate its process for adjudicating U visa petitions.  *Appendix: Bona Fide Determination Process Flowchart*, USCIS https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf (last visited January 15, 2026).

petitioner on the waiting list. *Id.* Ch. 6.  Final adjudication then occurs when space under the statutory cap is available. *Id.* Ch. 7.  During the final adjudication, USCIS conducts another full review of the petition. *Id.*  Neither a favorable BFD nor placement on the waiting list guarantee a grant of U visa status. *Id.*

In sum, the U visa program and its components—eligibility, annual cap, EAD requirements, and discretion to grant EADs to bona fide U visa petitioners—are statutory; placement of eligible U visa petitions on a waiting list when the annual cap has been met is a regulatory requirement; and the BFD process is an internal agency policy for implementing discretionary employment authorizations under § 1184(p)(6). *See Ayala v. Noem*, 781 F. Supp. 3d 1187, 1197 (D.N.M. 2025).

### *Defendant's Motion*

Defendant argues that, through the enactment of 8 U.S.C. § 1252(a)(2)(B)(ii), Congress provided clear intent to preclude judicial review of Plaintiff's claims.  That statute provides as follows, in relevant part:

> [N]o court shall have jurisdiction to review—
>
> > (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> > (ii) ***any other decision or action*** of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of the relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

Defendant relies on the recently decided *Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024). In that case, the plaintiffs sought relief under the APA to compel the government to determine a request to adjust their status from temporary visa holders to permanent residents pursuant to 8

6

U.S.C. § 1255(a). *Id.* at 771. The Court held that § 1252(a)(2)(B) presents a jurisdictional bar to both compelling the decision regarding a status adjustment and any delay in adjudicating the same. *Id.* at 775-776 ("The text of § 1252(a)(2)(B)(ii) and § 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a) like the Adjudication Hold Policy.").

In its Notice of Supplemental Authority, Defendant cites a recent decision of this Court in *Tokas v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 3501066 (E.D. Mo. Dec. 6, 2025), where United States District Judge Sarah E. Pitlyk applied *Thigulla* and held that § 1252(a)(2)(B)(ii) forecloses jurisdiction to review agency delays in adjudicating discretionary immigration benefits. The plaintiff in *Tokas* sought a Court order compelling USCIS to adjudicate his immigration petitions: a Form I-360 VAWA Self Petition and a Form I-484 Adjustment of Status Request. 2025 WL 3501066, at *1. Judge Pitlyk concluded: "following *Thigulla,* the Court finds that each of the delays in adjudicating Mr. Tokas's applications qualifies as a 'decision or action.'" *Id.*

As a separate basis for dismissal, Defendant argues that the doctrine of *res judicata* bars Plaintiff's claims, as Plaintiff raised the same claims in the United States District Court for the District of Nebraska and that Court dismissed the claims for lack of jurisdiction.

1. **BFD Claim**

In Claim 1 of the Complaint, Plaintiff alleges that USCIS has unreasonably delayed a BFD for Plaintiff, and requests that the Court compel USCIS to make a BFD within 14 days.

Plaintiff raised the same claim and alleged the same facts in an action filed in the District of Nebraska., *Patel v. Dir., U.S. Citizenship & Immigr. Servs.*, 8:25CV59, 2025 WL 1655294 (D.

7

Neb. June 11, 2025).  Specifically, Plaintiff sought relief related to an I-918 Petition and I-765 Application filed on October 24, 2024—the same date he alleges he filed the Petition and Application in the instant action.  *Id.* at * 1.  He requested that the District of Nebraska order the USCIS "to make bona fide determinations and decisions on the pending work authorization applications within 14 days." *Id.*   Chief United States District Judge Robert F. Rossiter, Jr. stated:

> Because § 1184(p)(6) gives the Secretary discretion over the EAD program for U-Visa applicants, the Court is barred by § 1252(a)(2)(B)(ii) from reviewing "decision or action" regarding that program. As in other cases, that prohibits review of certain decisions of the USCIS that affect the pace with which it issues BFDs and EADs to individuals waiting for a U-Visa adjudication. *See Thigulla*, 94 F.4th at 775; *Boulay*, 700 F. Supp. 3d at 757-58.

*Id.* at *4.  Judge Rossiter concluded that the INA, "therefore strips this Court of jurisdiction over the particular type of claim Patel raises in his complaint," and granted USCIS's Motion to Dismiss.  *Id.*

Defendant argues that the principles of *res judicata* and issue preclusion bar this action due to the District of Nebraska's dismissal of Plaintiff's complaint on the same facts as this case. The undersigned agrees that issue preclusion applies with regard to Plaintiff's BFD claim, but finds that it does not apply to Plaintiff's waiting list determination ("WLD") claims.

"The principles of *res judicata* apply to questions of jurisdiction as well as to other issues."  *Sandy Lake Band of Mississippi Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) (quoting *Am. Sur. Co. v. Baldwin,* 287 U.S. 156, 166 (1932)) (emphasis in original). "Res judicata incorporates the concepts of both issue preclusion and claim preclusion." *Id*. (citing *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)).  Issue preclusion has five elements:

(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *Id*. at 1102–03 (quoting *Robinette v. Jones,* 476 F.3d 585, 589 (8th Cir. 2007)).

For purposes of issue preclusion based on dismissal for lack of subject-matter jurisdiction, that Eighth Circuit has explained that the second element of "same issues" is met if the basis for subject matter jurisdiction is the same in both cases. *See Sandy Lake*, 714 F.3d at 1103 ("Although dismissal for lack of subject matter jurisdiction does not adjudicate the merits of the claims asserted, it does adjudicate the court's jurisdiction"); *Turner v. U.S. Dep't of Just.*, 815 F.3d 1108, 1112–13 (8th Cir. 2016).

Here, Plaintiff raised the same claim challenging the USCIS's failure to make a BFD in the District of Nebraska, asserting the same basis for jurisdiction (the APA). The Court concluded that 8 U.S.C. § 1252(a)(2)(B)(ii) stripped the Court of jurisdiction over Plaintiff's claim challenging the pace with which the USCIS issues BFDs. As such, the doctrine of jurisdictional issue preclusion applies to bar that claim in the instant action.

Plaintiffs second and third claims in this action relate to the lack of a WLD. Plaintiff's Complaint in the District of Nebraska set forth only "one cause of action," and requested that the Court compel Defendant to "make bona fide determinations and decisions on the pending work authorization applications." 2025 WL 1655294, at *1. Defendant acknowledges that Plaintiff's prayer for relief in the District of Nebraska case did not request placement on the waiting list as

9

it does in the instant case. (Doc. 7 at 11.) ("This demand implicates a tangled web of district court decisions that diverge on whether such a claim is reviewable—and if so, under what framework"). As such, the District of Nebraska did not address the issue of this Court's subject-matter jurisdiction of Plaintiff's WLD claims.

Plaintiff's Claims 2 and 3 are not, therefore, barred by the doctrine of issue preclusion. The undersigned will discuss its jurisdiction of Plaintiff's WLD claims below.

### 2. WLD Claims

Defendant argues that, to the extent Plaintiff's WLD claims are not barred by the application of *res judicata*, this Court lacks jurisdiction of those claims due to the principles of ripeness and redressability.

As an initial matter, the undersigned finds that the USCIS's placement of eligible petitioners on the waiting list and attendant grant of deferred action or parole is mandatory, not discretionary. The regulation is unequivocal: "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2) (emphasis added). Because these actions are nondiscretionary, they are not exempted from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii).

The Court next turns to Defendant's ripeness argument. Defendant notes that a WLD claim can only be initiated if the BFD is denied to Plaintiff. Because Plaintiff's WLD claims are contingent on a decision that has not yet been made in this case, Defendant argues that the claims are unripe and should be dismissed. As to redressability, Defendant argues that Plaintiff's request that this Court declare USCIS's delay unreasonable and compel an expedited adjudication of his pending immigration benefits presumes a favorable outcome by the USCIS, which is entirely speculative.

10

"To demonstrate that an alleged dispute is ripe for review, the complainant must show both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.  A case is fit for judicial decision when it would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 998 (8th Cir. 2022) (internal quotation marks and citations omitted).  To show hardship, a U visa plaintiff seeking to compel a WLD "'must show he has sustained or is immediately in danger of sustaining some direct injury' due to USCIS's allegedly unreasonable delay or withholding of a WLD."  *Noorani, v. Dir. of U.S. Citizenship and Immigr. Servs.*, No. 8:25-cv-221, 2025 WL 3282296, at *2 (D. Neb. Nov. 25, 2025) (quoting *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 992 (8th Cir. 2016)).

Other Courts have addressed and rejected ripeness arguments like Defendant's.  *See, e.g., Prajapati, et al. v.  v. Dir. of U.S. Citizenship and Immigr. Servs.*, No. 4:25-cv-00258, 2026 WL 36451, at *6 (W.D. Mo. Jan. 6, 2026) ("A WLD is not legally contingent on a speculative future BFD, and Plaintiff's' claim for unreasonable delay is therefore fit for judicial decision"); *Noorani*, 2025 WL 3282296, at *3 (finding WLD claims are not contingent on the BFD process); *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1199 (D.N.M. 2025) (finding "WLD claim is not made unripe by the existence of the BFD process").

The undersigned finds the analysis of the decisions cited above persuasive.  As the *Prajapati* Court noted, "[w]hile it may be true as a matter of current USCIS practice (as embodied in its Policy Manual) that a BFD comes before a WLD, this is not required by either statute or regulation."  2026 WL 36451, at *6.  USCIS has discretion to grant work authorization determinations to bona fide applications, and USCIS "implemented the BFD process to manage this discretion and could rescind the process at any time." *Id.*  By contrast, USCIS is *required* by

11

regulation to place all eligible petitioners who are not granted nonimmigrant status solely due to the cap on a waiting list. *See id;* 8 C.F.R. § 214.14(d)(2). "The plain language of the regulation does not limit WLD eligibility to petitioners who received an unfavorable BFD." *Noorani*, 2025 WL 3282296, at *3. Thus, the Court finds that Plaintiff's WLD claims are ripe.

      Finally, the Court addresses Defendant's redressability argument. To establish standing under Article III of the Constitution, plaintiffs must show: (1) they have suffered an "injury in fact" that is concrete, particularized, and actual or imminent, (2) that there is a causal connection between the alleged injury and the defendant's conduct, and (3) that judicial relief will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As to the "redressability" requirement for standing, the Eighth Circuit Court of Appeals has explained, "[r]edressability exists when a favorable decision will relieve the plaintiffs of a discrete injury, even if it does not relieve them of every injury, or if the risk of injury would be reduced to some extent if [the plaintiffs] received the relief they seek." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1078 (8th Cir. 2024) (internal quotation marks and citations omitted).

      Here, Plaintiff alleges that USCIS is unlawfully withholding its WLD and unreasonably delaying the WLD. Plaintiff's petition—filed on October 24, 2024—is currently delayed. Plaintiff has therefore alleged a particularized injury in fact. Defendant argues that redressability is not satisfied here because, "if Plaintiff's application fails to meet statutory or regulatory requirements, accelerating adjudication may simply hasten an otherwise avoidable denial." (Doc. 7 at 17.) This is a mischaracterization of the injury Plaintiff seeks to redress. "When properly framed as the lost opportunity to seek interim waiting list benefits, the Plaintiff's injury is remediable by a court order requiring a waiting list determination within a reasonable time." *Lopez v. Jaddou*, No. 4:24-CV-2128, 2025 WL 3251626, at *7 (S.D. Tex. Nov. 21, 2025); *see*

12

*De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 720 F. Supp. 3d 794, 802-03 (N.D. Cal. 2024) ("When properly framed as the lost opportunity to seek parole, the ... Plaintiffs' injury is plainly remediable by a court order requiring waiting list decisions within a reasonable time."); *Reyes Olmos v. U.S. Citizenship & Immigr. Servs.*, 785 F. Supp. 3d 459, 471-72 (D. Neb. 2025) ("[B]ecause the plaintiffs have yet to receive WLDs… the plaintiffs have suffered an actual injury.  Further, the Court has jurisdiction to review allegations of unreasonably delayed WLDs for eligible petitioners.").

Defendant cites *Hernandez v. Jaddou*, 4:24-CV-00453, 2025 WL 819657, at *3 (S.D. Tex. Mar. 6, 2025), which held a U visa petitioner plaintiff did not have standing due to a lack of redressability.  The *Hernandez* case, however, is distinguishable as that Court only addressed the plaintiff's BFD claim, whereas only Plaintiff's WLD claim is relevant in the instant case.

In sum, this Court has both subject-matter jurisdiction and Article III standing over Plaintiff's WLD claims.  Thus, Defendant's Motion to Dismiss will be denied as to Claims 2 and 3 of the Complaint.

### B.  Unauthorized Practice of Law Concerns

Plaintiff's Complaint is titled "Pro Se[1] Complaint."  (Doc. 1 at 1.)  The footnote contained in the title of the Complaint reads as follows:

> Plaintiff purchased this form document through www.prosepro.com, a company operating in South Carolina.  Plaintiff consulted no attorney in the drafting or filing of this document.  Rather, Plaintiff purchased a pre-written form then filled in the digital "blanks" on their own.  See, e.g., https//www.technethics.com/assets/Medlock-v-LegalZoom.com-Inc.pdf.

(Doc. 1 at 1 n. 1.)

Defendant argues that Plaintiff's admission that he purchased his Complaint from the company "Pro Se Pro" raises serious concerns about the unauthorized practice of law.

13

Defendant notes that Plaintiff used the same template complaint in the District of Nebraska action discussed above. 2025 WL 1655294 at *2 n. 3. In that action, Judge Rossiter described Plaintiff's Complaint as "just one of over one-hundred nearly-identical *pro se* form complaints that have been filed in this Court in the past few months." *Id.* at *1 n. 2. During a hearing held in the District of Nebraska, Patel explained that the form complaint he used was prepared and sold by Pro Se Pro, "a company based in Isle of Palms, South Carolina." *Id.* at *2 n. 3. Judge Rossiter expressed concern over the use of the form complaint as follows:

> To start, although the use of form complaints may be appropriate at times, so-called "ghostwriting" by an attorney without attribution is a violation of Nebraska Rule of Professional Conduct § 3-501.2(c). *See* NEGenR 1.8(a) (adopting the Nebraska Rules of Professional Conduct "as the rules of this court"). That rule also applies to Pro Se Pro's preparation of substantive responses to the Director's motions to dismiss.
>
> One of the apparent founding members of Pro Se Pro is an attorney who has appeared in this Court in similar cases. And as an attorney admitted to practice in this Court, he is bound by the Nebraska Rules of Professional Conduct. *See id.*; *see also* S.C. App. Ct. R. 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction or assist another in doing so."). On the other hand, if non-attorney employees of Pro Se Pro have prepared the detailed responses to the Rule 12(b)(1) motions filed in these cases, that practice would likely raise unauthorized-practice concerns. *See, e.g.*, Neb. Sup. Ct. R. § 3-1001 (defining the "practice of law" as "the application of legal principles and judgment with regard to the circumstances or objectives of another" including the "drafting ... of legal documents which affect the legal rights" of a person).

*Id.* Judge Rossiter cautioned that the "lay and lawyer members of Pro Se Pro" should heed the prohibitions of the Nebraska Rules of Professional Conduct," but stated that the Court would "fully consider both parties' briefs and rule on the motion to dismissed based on those filings." *Id.*

As Defendant notes, the same ethical concerns cited by Judge Rossiter apply under Missouri law.  Under Missouri Revised Statute § 484.020.1, no person or entity "shall engage in the practice of law" in Missouri unless having been duly licensed by the State.  The Missouri legislature defines the practice of law as:

> the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee, or commission constituted by law or having authority to settle controversies.

Missouri Revised Statute § 484.010.1.

Although the undersigned agrees that Plaintiff's Complaint raises potential unauthorized practice of law issues, the specific concerns described by Judge Rossiter are not present in the instant action at this time.  Specifically, Judge Rossiter referred to Pro Se Pro's "preparation of substantive responses to the Director's motion to dismiss."  2025 WL 165529 at *2 n. 3.  The only document Plaintiff has filed in this action is the Complaint, in which he states that he did *not* consult an attorney in the drafting of the Complaint but only purchased a pre-written form and filled in the digital blanks on his own.  (Doc. 1 at 1 n. 1.)  As such, the undersigned finds that sanctions are inappropriate at this time.  Plaintiff—and Pro Se Pro—are cautioned, however, that this Court will not accept filings "ghostwritten" by others.  Future filings of Plaintiff should be written by Plaintiff, in his own words.  If Plaintiff fails to follow the Court's directives, he will be subject to sanctions.

Accordingly,

15

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 6) is **granted in part and denied in part**.  The Motion is **granted** in that Plaintiff's Complaint is <u>**dismissed for lack of jurisdiction as to Claim 1**</u>.  Defendant's Motion to Dismiss is <u>**denied as to Claims 2 and 3**</u>.

       /s/ *Abbie Crites-Leoni*
       ABBIE CRITES-LEONI
       UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of January, 2026.